1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| 9  JESSICA BAILEY, MARTYE BENJAMIN, FERNANDO GARCIA, ANDRES GOMEZ, 10  LATRESA GRANTHAM, and MIKE MAGBALETA on behalf of themselves and a 11  class of similarly situated persons, | **NO.: 23-cv-00211** **CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |

12              Plaintiffs,

13        v.

14   T-MOBILE USA, INC.,

15              Defendant.

16
17
18
19
20
21
22
23
24
25
26
27
28

**HAGENS BERMAN**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     JURISDICTION, VENUE, AND CHOICE OF LAW ...................................2

III.    PARTIES ...............................................................................................3

    A.      Plaintiff Jessica Bailey .............................................................3

    B.      Plaintiff Martye Benjamin .......................................................4

    C.      Plaintiff Fernando Garcia .........................................................6

    D.      Plaintiff Andres Gomez ............................................................7

    E.      Plaintiff LaTresa Grantham ......................................................8

    F.      Plaintiff Mike Magbaleta .........................................................9

    G.      Defendant T-Mobile ...............................................................11

IV.     FACTUAL BACKGROUND .................................................................11

    A.      T-Mobile failed to adequately protect customer data, resulting in
        the 2022 Data Breach. .............................................................11

        1.      The 2022 Data Breach ..................................................11

    B.      The 2022 Data Breach puts consumers at increased risk of fraud
        and identity theft. ....................................................................14

V.      CLASS ACTION ALLEGATIONS ........................................................15

VI.     CAUSES OF ACTION .........................................................................18

    A.      Claims Brought on Behalf of the Nationwide Class ...............18

COUNT ONE NEGLIGENCE ........................................................................18

COUNT TWO NEGLIGENCE PER SE ............................................................20

COUNT THREE GROSS NEGLIGENCE..........................................................21

COUNT FOUR BREACH OF EXPRESS CONTRACTS .......................................23

COUNT FIVE BREACH OF IMPLIED CONTRACTS .........................................25

CLASS ACTION COMPLAINT - i
CASE NO. 23-cv-00211
011149-11/2181053 V2



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

COUNT SIX BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR
    DEALING...........................................................................................................27

COUNT SEVEN UNJUST ENRICHMENT (ALTERNATIVE TO BREACH OF
    CONTRACT CLAIM)...................................................................................28

COUNT EIGHT DECLARATORY JUDGMENT .............................................................29

    B.     Claims Brought on Behalf of the Florida Subclass................................30

COUNT NINE VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR
    TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.* ...................30

    C.     Claims Brought on Behalf of the Idaho Subclass ................................33

COUNT TEN VIOLATION OF THE IDAHO CONSUMER PROTECTION
    ACT, IDAHO CODE §§ 48-601, ET SEQ. ........................................................33

    D.     Claims Brought on Behalf of the Ketucky Subclass..............................35

COUNT ELEVEN KENTUCKY COMPUTER SECURITY BREACH
    NOTIFICATION ACT, KY. REV. STAT. ANN. §§ 365.732, ET SEQ. .........35

COUNT TWELVE KENTUCKY CONSUMER PROTECTION ACT, KY. REV.
    STAT. ANN. §§ 367.110, *ET SEQ.* .................................................................36

    E.     Claims Brought on Behalf of the New Jersey Subclass.........................39

COUNT THIRTEEN NEW JERSEY CUSTOMER SECURITY BREACH
    DISCLOSURE ACT, N.J. STAT. ANN. §§ 56:8-163, *ET SEQ.* .....................39

COUNT FOURTEEN NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT.
    ANN. §§ 56:8-1, *ET SEQ.* .............................................................................40

    F.     Claims Brought on Behalf of the North Carolina Subclass ..................42

COUNT FIFTEEN NORTH CAROLINA IDENTITY THEFT PROTECTION
    ACT, N.C. GEN. STAT. §§ 75-60, ET SEQ. .....................................................42

COUNT SIXTEEN NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,
    N.C. GEN. STAT. ANN. §§ 75-1.1, *ET SEQ.*....................................................43

    G.     Claims Brought on Behalf of the Texas Subclass.................................45

COUNT SEVENTEEN DECEPTIVE TRADE PRACTICES—CONSUMER
    PROTECTION ACT, TEXAS BUS. & COM. CODE §§ 17.41, ET SEQ. .....45

VII.    PRAYER FOR RELIEF ..............................................................................50

VIII.    DEMAND FOR JURY TRIAL ...................................................................50

CLASS ACTION COMPLAINT - ii
CASE NO. 23-cv-00211
011149-11/2181053 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiffs, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this action against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.    Washington-based cellular provider T-Mobile markets itself as a sophisticated, reliable network provider that sets itself apart by its "100% customer commitment."[2] T-Mobile represents that "[a]t T-Mobile, privacy and security is of utmost importance," and that the company "take[s] our customer and prospective customer privacy VERY seriously."[3]

3.    Despite this representation, T-Mobile seems incapable of adequately protecting the information it maintains from and about its customers. On the very day that T-Mobile was in court seeking final approval of a $350 million settlement concerning its then most recent data breach from the fall of 2021, T-Mobile announced a new and successive data breach that impacted 37 million of its customers (the "2022 Data Breach").

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. LAWYER 28-35 (May 2014), https://.

[2] *Un-Carrier History*, T-MOBILE, https://www.t-mobile.com/our-story/un-carrier-history (last visited Feb. 1, 2023).

[3] John Legere, *A Letter from CEO John Legere on Experian Data Breach*, T-MOBILE (Sept. 30, 2015), https://www.t-mobile.com/news/blog/experian-data-breach.

4.      On January 20, 2023, T-Mobile disclosed that two weeks earlier, on January 5, 2023, it discovered that hackers gained access to customer information on November 25, 2022, which access continued for an unspecified period.[4] T-Mobile disclosed that hackers may have obtained names, billing addresses, emails, phone numbers, birth dates, and account numbers, in addition to account-specific information like the number of lines on the account and plan features.[5]

5.      As a result of the 2022 Data Breach, through which their Personally Identifiable Information ("PII") was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

6.      By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose private information was accessed during the 2022 Data Breach.

## II.      JURISDICTION, VENUE, AND CHOICE OF LAW

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than T-Mobile, there are more than 100 members of the Class, and the aggregate

---

[4] Will Feuer, *T-Mobile Says hackers Stole Data onAbout 37 Million Customers in Breach*, WALL ST. J. (updated Jan. 20, 2023), https://www.wsj.com/articles/t-mobile-says-stole-data-on-about-37-million-customers-11674166048.

[5] *See id.*

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8.     The Court has personal jurisdiction over this action because T-Mobile maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

9.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because T-Mobile's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

### III.    PARTIES

**A.    Plaintiff Jessica Bailey**

10.     Plaintiff Jessica Bailey is a citizen of and is domiciled in the state of Kentucky.

11.     Plaintiff is a customer of T-Mobile.

12.     Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

13.     Plaintiff would not have entrusted her PII to T-Mobile had she known that T-Mobile failed to maintain adequate data security.

14.     On or about January 26, 2023, plaintiff received notification from T-Mobile that her information was compromised.

15.     Thereafter, the T-Mobile application that Plaintiff uses for information related to her account provided the following notification to Plaintiff:

CLASS ACTION COMPLAINT - 3
CASE NO. 23-cv-00211
011149-11/2181053 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# Good Evening, Jessica

## IMPORTANT:

T-Mobile has determined that limited account information was obtained without authorization. Our systems and policies prevented the most sensitive types of customer information from being accessed. Customer accounts and finances are not put directly at risk by this event. Your password, SSN and payment methods were NOT affected, but other info. like name, # of lines, contact details and DOB may have been.

Learn more ›

16.    Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

17.    As a result of the 2022 Data Breach and the release of her PII, which she expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the 2022 Data Breach.

**B.    Plaintiff Martye Benjamin**

18.    Plaintiff Martye Benjamin is a citizen of and is domiciled in the state of Florida.

CLASS ACTION COMPLAINT - 4
CASE NO. 23-cv-00211
011149-11/2181053 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

19.     Plaintiff is a customer of T-Mobile.

20.     Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

21.     Plaintiff would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

22.     On or about January 26, 2023, plaintiff received notification from T-Mobile that his information was compromised.

23.     Thereafter, the T-Mobile application that Plaintiff uses for information related to his account provided the following notification to Plaintiff:

**NOTICE**

After a thorough investigation, T-Mobile determined that a bad actor used a single Application Programming Interface (or API) to obtain limited types of information on a number of customer accounts.

24.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

25.     As a result of the 2022 Data Breach and the release of his PII, which he expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result

1    of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain

2    the impact of the 2022 Data Breach.

3    **C.    Plaintiff Fernando Garcia**

4        26.    Plaintiff Fernando Garcia is a citizen of and is domiciled in the state of Texas.

5        27.    Plaintiff is a customer of T-Mobile.

6        28.    Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and

7    required by T-Mobile for the provision of its services. T-Mobile obtained and continues to

8    maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized

9    access and disclosure.

10        29.    Plaintiff would not have entrusted his PII to T-Mobile had he known that T-

11    Mobile failed to maintain adequate data security.

12        30.    On or about February 1, 2023, Plaintiff received notification from T-Mobile that

13    his information was compromised.

14        31.    Thereafter, the T-Mobile application that Plaintiff uses for information related to

15    his account provided the following notification to Plaintiff:

16

17    ## Good Afternoon, Fernando

18

19    ## IMPORTANT:

20

21    T-Mobile has determined that limited
account information was obtained without
22    authorization. Our systems and policies
prevented the most sensitive types of
23    customer information from being accessed.
Customer accounts and finances are not put
24    directly at risk by this event. Your password,
SSN and payment methods were NOT
25    affected, but other info. like name, # of
lines, contact details and DOB may have
26    been.

27    _____

28    Learn more ›



32.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

33.     As a result of the 2022 Data Breach and the release of his PII, which he expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the 2022 Data Breach.

**D.     Plaintiff Andres Gomez**

34.     Plaintiff Andres Gomez is a citizen of and is domiciled in the state of Idaho.

35.     Plaintiff is a customer of T-Mobile.

36.     Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

37.     Plaintiff would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

38.     On or about January 26, 2023, plaintiff received notification from T-Mobile that his information was compromised.

39.     Thereafter, the T-Mobile application that Plaintiff uses for information related to his account provided the following notification to Plaintiff:

CLASS ACTION COMPLAINT - 7
CASE NO. 23-cv-00211
011149-11/2181053 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## Good Afternoon, Andres

**IMPORTANT:**

T-Mobile has determined that limited account information was obtained without authorization. Our systems and policies prevented the most sensitive types of customer information from being accessed. Customer accounts and finances are not put directly at risk by this event. Your password, SSN and payment methods were NOT affected, but other info. like name, # of lines, contact details and DOB may have been.

Learn more ›

40.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

41.     As a result of the 2022 Data Breach and the release of his PII, which he expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the 2022 Data Breach.

**E.     Plaintiff LaTresa Grantham**

42.     Plaintiff LaTresa Grantham is a citizen of and is domiciled in the state of North Carolina.

43.     Until February 2, 2023, Plaintiff was a customer of T-Mobile.

44.     Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

CLASS ACTION COMPLAINT - 8
CASE NO. 23-cv-00211
011149-11/2181053 V2


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

45.    Plaintiff would not have entrusted her PII to T-Mobile had she known that T-Mobile failed to maintain adequate data security.

46.    On or about January 26, 2023, plaintiff received notification from T-Mobile that her information was compromised:



Thursday Jan 26 3:58PM

ASWFreeMSG: IMPORTANT: Some of your information was obtained without authorization. Passwords, SSN, payment methods were NOT affected. Your name, # of lines, contact details and other account information may have been. Learn more t-mo.co/CustInfo

Jan 26, 3:58PM

47.    Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

48.    As a result of the 2022 Data Breach and the release of her PII, which she expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the 2022 Data Breach.

49.    Because Plaintiff feels that she can no longer trust T-Mobile to keep her information safe, Plaintiff switched her cellular provider to AT&T on February 2, 2023.

F.    **Plaintiff Mike Magbaleta**

50.    Plaintiff Mike Magbaleta is a citizen of and is domiciled in the state of New Jersey.

51.     Plaintiff is a customer of T-Mobile.

52.     Plaintiff provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

53.     Plaintiff would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

54.     On or about January 26, 2023, plaintiff received notification from T-Mobile that his information was compromised.

55.     Thereafter, the T-Mobile application that Plaintiff uses for information related to his account provided the following notification to Plaintiff:



56.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the 2022 Data Breach, including researching the 2022 Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

CLASS ACTION COMPLAINT - 10
CASE NO. 23-cv-00211
011149-11/2181053 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

57.     As a result of the 2022 Data Breach and the release of his PII, which he expected T-Mobile to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the 2022 Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the 2022 Data Breach.

**G.     Defendant T-Mobile**

58.     Defendant T-Mobile USA, Inc. ("T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile is a wireless network operator and the second largest wireless carrier in the United States. It provides wireless voice and data services for approximately 105 million subscribers.

59.     In the course of its business, T-Mobile collects names, phone numbers, Social Security numbers, physical addresses, driver's license information, and other information from its customers and prospective customers.

## IV.     FACTUAL BACKGROUND

**A.     T-Mobile failed to adequately protect customer data, resulting in the 2022 Data Breach.**

**1.     The 2022 Data Breach**

60.     On January 20, 2023, T-Mobile disclosed that two weeks earlier, on January 5, 2023, it discovered that hackers gained access to customer information on November 25, 2022, which access continued for an unspecified period.[6] T-Mobile disclosed that hackers may have obtained names, billing addresses, emails, phone numbers, birth dates, and account numbers, in addition to account specific information like the number of lines on the account and plan features.[7]

61.     T-Mobile explained that the stolen data was exfiltrated through an Application Programming Interface (API). Using the API, the unknown hacker was able to access account

---

[6] Feuer, *supra* note 4.

[7] *See id.*

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  information. The data theft was apparently ongoing from on or about November 25, 2022, until

2  T-Mobile discovered it on January 5, 2023, and shut it down withing 24 hours of discovery.

3       62.     This is not T-Mobile's first experience with a data breach—despite collecting

4  private information from customers in the ordinary course of business, this marks at least the

5  *sixth breach* for T-Mobile in the past four years. In August 2018, sensitive information for over

6  two million T-Mobile customers was exposed.[8] In November 2019, approximately one million

7  T-Mobile users' names, addresses, phone numbers, account numbers, rate plans, and customer

8  proprietary network information was accessed by hackers.[9] Less than six months later, in March

9  2020, an unknown number of customers' names, addresses, phone numbers, account numbers,

10  rate plans and features, and billing information was accessed by hackers.[10] Later that year, the

11  private information of approximately 200,000 customers' data was exposed in yet another

12  breach.[11] And on the day that T-Mobile announced the 2022 Data Breach, its lawyers were in

13  court seeking approval of a $350 million settlement stemming from a massive data breach in

14  2021 that resulted in the theft of PII of over 50 million T-Mobile customers (the "2021 Data

15  Breach").

16       63.     After each of these breaches, T-Mobile reiterated that it takes the security of

17  customer information seriously and reassured customers that it has "a number of safeguards in

18  place to protect customer information from unauthorized access," going so far as to claim that:

19  "Keeping our customers' data safe is a responsibility we take incredibly seriously and preventing

20

21

22

23  ───────────────

      [8] Alicia Hope, *Second Data Breach in 2020 for T-Mobile Exposed Customer and Call-Related Information of*

24  *200,000 subscribers*, CPO MAGAZINE (Jan. 11, 2021), https://www.cpomagazine.com/cyber-security/second-data-breach-in-2020-for-t-mobile-exposed-customer-and-call-related-information-of-200000-subscribers/.

25      [9] Dewin Coldewey, *More than 1 million T-Mobile customers exposed by breach*, TECHCRUNCH (Nov. 22, 2019),
    https://techcrunch.com/2019/11/22/more-than-1-million-t-mobile-customers-exposed-by-breach/.

26      [10] *T-Mobile's Data Breach Exposes Customer's Data and Financial Information*, SECURITY MAGAZINE (Mar. 6,

27  2020), https://www.securitymagazine.com/articles/91856-t-mobiles-databreach-exposes-customers-data-and-financial-information.

28      [11] Hope, *supra* note 8.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

this type of event from happening has always been a top priority of ours."[12] Further, T-Mobile's

Privacy Notice reiterates the company's purported commitment to securing customers' data:

> We use administrative, technical, contractual, and physical
> safeguards designed to protect your data. For example, when you
> contact us by phone or visit us in our stores, we have procedures in
> place to make sure that only the primary account holder or
> authorized users have access.[13]

64.    The T-Mobile Privacy Center website also prominently reiterates these

representations[14]:



65.    Despite these representations, T-Mobile has continued to experience data

breaches with increasing regularity and severity; even though in response to the 2021 Data

Breach, which was described by a security and risk analyst at Forrester Research as "the worst

breach they've had so far[,]"[15] T-Mobile pledged to spend $150 million to improve its data

security.

---

[12] *The Cyberattack Against T-Mobile and Our Customers: What happened, and what we are doing about it*, T-MOBILE (Aug. 27, 2021), https://www.t-mobile.com/news/network/cyberattack-against-tmobile-and-our-customers.

[13] *Privacy Notice*, T-MOBILE (May 5, 2021), https://www.t-mobile.com/privacy-center/privacy-notices/t-mobile-privacy-notice.html.

[14] *Privacy Center*, T-MOBILE, https://www.t-mobile.com/privacy-center (last visited Feb. 1, 2023).

[15] Chris Velazco, *Here's what to do if you think you're affected by T-Mobile's big data breach*, THE WASHINGTON POST (Aug. 19, 2021), https://www.washingtonpost.com/technology/2021/08/19/t-mobile-data-breach-what-to-do/.

66.     T-Mobile's failure to follow standard data protection procedures resulted in the 2021 Data Breach. In response to the 2021 Data Breach, Glenn Gerstell, former general counsel for the National Security Agency, noted that the fact that many of the records reported stolen were from prospective clients or former customers did "not sound like good data management practices."[16]

67.     Even the cybercriminal who was behind the 2021 Data Breach reported to the Wall Street Journal: "Their security is awful."[17] The cybercriminal disclosed that he "managed to pierce T-Mobile's defenses after discovering in July an unprotected router exposed on the internet. He said he had been scanning T-Mobile's known internet addresses for weak spots using a simple tool available to the public."[18]

68.     T-Mobile was familiar with its obligations—created by contract, industry standards, common law, and representations to its customers—to protect customer information. Plaintiffs and Class members provided their private information to T-Mobile with the reasonable expectation that T-Mobile would comply with its obligations to keep such information confidential and secure.

69.     In response to the 2021 Data Breach, T-Mobile's CEO, Mike Silvert, admitted that "[w]e didn't live up to the expectations we have for ourselves to protect our customers."[19]

70.     T-Mobile failed to comply with these obligations, resulting in the 2022 Data Breach. Plaintiffs and Class members now face years of constant surveillance of their financial and personal records.

**B.     The 2022 Data Breach puts consumers at increased risk of fraud and identity theft.**

71.     An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from

---

[16] Lisa Vaas, *T-Mobile's Security Is 'Awful,' Says Purported Thief*, THREATPOST (Aug. 28, 2021) https://threatpost.com/t-mobile-security-awful-thief/169011/.

[17] *Id.*

[18] *Id.*

[19] Dave Sebastian & Drew FitzGerald, *T-Mobile CEO Apologizes for Data Security-Breach*, WALL ST. J. (Aug. 27, 2021), https://www.wsj.com/articles/t-mobile-ceo-apologizes-for-data-security-breach-11630071045.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  immigration fraud, obtaining a driver's license or identification card, obtaining government

2  benefits, and filing fraudulent tax returns to obtain tax refunds.

3      72.    Identity thieves can use a victim's PII to open new financial accounts, incur

4  charges in the victim's name, take out loans in the victim's name, and incur charges on existing

5  accounts of the victim. Despite T-Mobile's assurance that "Our systems and policies prevented

6  the most sensitive types of customer information from being accessed", Plaintiff's finances are

7  now at risk due to the 2022 Data Breach.

8      73.    Identity theft is the most common consequence of a data breach—it occurs to

9  65% of data breach victims.[20] Consumers lost more than $56 billion to identity theft and fraud in

10  2020, and over 75% of identity theft victims reported emotional distress.[21]

11      74.    Plaintiff is now in the position of having to take steps to mitigate the damages

12  caused by the 2022 Data Breach. Once use of compromised non-financial PII is detected, the

13  emotional and economic consequences to the victims are significant. Studies done by the ID

14  Theft Resource Center, a non-profit organization, found that victims of identity theft had marked

15  increased fear for personal financial security. The report attributes this to more people having

16  been victims before, contributing to greater awareness and understanding that they may suffer

17  long term consequences from this type of crime.[22]

18      75.    T-Mobile failed to protect and safeguard Plaintiffs' and Class members' private

19  information, in fact failing to adhere to even its most basic obligations. As a result, Plaintiffs and

20  Class members have suffered or will suffer actual injury, including loss of privacy, costs, and

21  loss of time.

22          V.    CLASS ACTION ALLEGATIONS

23      76.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of

24  Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

25  ─────────────────

26  [20] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics.

    [21] *Id.*

27  [22] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://idtheftinfo.org/latest-news/72

28  (last visited Feb. 1, 2023).

All natural persons in the United States whose Personally
Identifiable Information was compromised as a result of the 2022
Data Breach.

77.    In addition, the State Subclasses are each defined as follows:

**Florida Subclass:** All natural persons in the State of Florida
whose Personally Identifiable Information was compromised as a
result of the 2022 Data Breach.

**Idaho Subclass:** All natural persons in the State of Idaho whose
Personally Identifiable Information was compromised as a result of
the 2022 Data Breach.

**Kentucky Subclass:** All natural persons in the State of Kentucky
whose Personally Identifiable Information was compromised as a
result of the 2022 Data Breach.

**New Jersey Subclass:** All natural persons in the State of New
Jersey whose Personally Identifiable Information was
compromised as a result of the 2022 Data Breach.

**North Carolina Subclass:** All natural persons in the State of north
Carolina whose Personally Identifiable Information was
compromised as a result of the 2022 Data Breach.

**Texas Subclass:** All natural persons in the State of Texas whose
Personally Identifiable Information was compromised as a result of
the 2022 Data Breach.

78.    **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the
Class or identity of the Class members, since such information is in the exclusive control of
Defendant. Nevertheless, the Class encompasses at least 37 million individuals dispersed
throughout the United States. The number of Class members is so numerous that joinder of all
Class members is impracticable. The names, addresses, and phone numbers of Class members
are identifiable through documents maintained by Defendant.

79.    **Commonality and Predominance:** This action involves common questions of
law and fact which predominate over any question solely affecting individual Class members.
These common questions include:

    a.    whether Defendant engaged in the conduct alleged herein;

    b.    whether Defendant had a legal duty to use reasonable security
measures to protect Plaintiffs' and Class members' PII;

    c.    whether Defendant timely, accurately, and adequately informed
Plaintiffs and Class members that their PII had been compromised;



d. whether Defendant breached its legal duty by failing to protect the PII of Plaintiffs and Class members;

e. whether Defendant acted reasonably in securing the PII of Plaintiffs and Class members;

f. whether Plaintiffs and Class members are entitled to injunctive relief; and

g. whether Plaintiffs and Class members are entitled to damages and equitable relief.

80. **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class members arise from the same operative facts and are based on the same legal theories.

81. **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

82. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system.



1   By contrast, the class action device presents far fewer management difficulties and provides the

2   benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.   CAUSES OF ACTION

**A.   Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE
### NEGLIGENCE

83.   Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

84.   T-Mobile owed a duty to Plaintiffs and Class members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing T-Mobile's networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiffs' and Class members' information was adequately secured from unauthorized access.

85.   T-Mobile's Privacy Notice acknowledged T-Mobile's duty to adequately protect Plaintiffs' and Class members' PII.

86.   T-Mobile owed a duty to Plaintiffs and Class members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class members' PII.

87.   T-Mobile also had a duty to only maintain PII that was needed to serve customer needs.

88.   T-Mobile owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and Class members' PII.

89.   T-Mobile also had independent duties under Plaintiffs' and Class members' state laws that required T-Mobile to reasonably safeguard Plaintiffs' and Class members' PII, and promptly notify them about the 2022 Data Breach.

90.   T-Mobile had a special relationship with Plaintiffs and Class members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiffs' and

1    Class members' willingness to entrust T-Mobile with their PII was predicated on the

2    understanding that T-Mobile would take adequate security precautions. Moreover, T-Mobile was

3    capable of protecting its networks and systems, and the PII it stored on them, from unauthorized

4    access.

5    91.    T-Mobile breached its duties by, among other things: (a) failing to implement and

6    maintain adequate data security practices to safeguard Plaintiffs' and Class members' PII,

7    including administrative, physical, and technical safeguards; (b) failing to detect the 2022 Data

8    Breach in a timely manner; and (c) failing to disclose that its data security practices were

9    inadequate to safeguard Plaintiffs' and Class members' PII.

10    92.    But for T-Mobile's breach of its duties, including its duty to use reasonable care

11    to protect and secure Plaintiffs' and Class members' PII, Plaintiffs' and Class members' PII

12    would not have been accessed by unauthorized parties.

13    93.    Plaintiffs and Class members were foreseeable victims of T-Mobile's inadequate

14    data security practices. T-Mobile knew or should have known that a breach of its data security

15    systems would cause damage to Plaintiffs and Class members.

16    94.    It was reasonably foreseeable that the failure to reasonably protect and secure

17    Plaintiffs' and Class members' PII would result in unauthorized access to T-Mobile's networks,

18    databases, and computers that stored or contained Plaintiffs' and Class members' PII.

19    95.    As a result of T-Mobile's negligent failure to prevent the 2022 Data Breach,

20    Plaintiffs and Class members suffered injury, which includes, but is not limited to, exposure to a

21    heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class

22    members must monitor their financial accounts and credit histories more closely and frequently

23    to guard against identity theft. Plaintiffs and Class members have also incurred, and will continue

24    to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes,

25    credit monitoring services, and other protective measures to deter and detect identity theft. The

26    unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of

27    the PII.

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

96.     The harm to Plaintiffs and Class members was a proximate, reasonably foreseeable result of T-Mobile's breaches of its aforementioned duties.

97.     Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**

98.     Plaintiffs allege and incorporate the foregoing allegations as if fully set forth herein.

99.     Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

100.    In addition, under state data security statutes, T-Mobile had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class members' PII.

101.    T-Mobile breached its duties to Plaintiffs and Class members, under the FTCA and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

102.    Plaintiffs and Class members were foreseeable victims of T-Mobile's violations of the FTCA and state data security statutes. T-Mobile knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiffs' and Class members' PII would cause damage to Plaintiffs and Class members.

103.    T-Mobile's failure to comply with the applicable laws and regulations constitutes negligence *per se*.

104.    But for T-Mobile's violation of the applicable laws and regulations, Plaintiffs' and Class members' PII would not have been accessed by unauthorized parties.

105.    As a result of T-Mobile's failure to comply with applicable laws and regulations, Plaintiffs and Class members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII.

106.    The harm to Plaintiffs and the Class members was a proximate, reasonably foreseeable result of T-Mobile's breaches of the applicable laws and regulations.

107.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT THREE**
**GROSS NEGLIGENCE**

108.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

109.    Plaintiffs and Class members entrusted T-Mobile with highly-sensitive and inherently personal private data subject to confidentiality laws.

110.    In requiring, obtaining and storing Plaintiffs' and Class members' PII, T-Mobile owed a duty of reasonable care in safeguarding the PII.

111.    T-Mobile's networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs' and Class members' PII were secured from unauthorized access.

112.    T-Mobile's networks, systems, protocols, policies, procedures, and practices, as described above, were not reasonable given the sensitivity of the Plaintiffs' and Class members' private data and the known vulnerabilities of T-Mobile's systems.

113.    T-Mobile did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

114.    Upon learning of the 2022 Data Breach, T-Mobile should have immediately disclosed the 2022 Data Breach to Plaintiffs and Class members, credit reporting agencies, the

CLASS ACTION COMPLAINT - 21
CASE NO. 23-cv-00211
011149-11/2181053 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    Internal Revenue Service, financial institutions, and all other third parties with a right to know

2    and the ability to mitigate harm to Plaintiffs and Class members as a result of the 2022 Data

3    Breach.

4        115.    Despite knowing its networks, systems, protocols, policies, procedures, and

5    practices, as described above, were not adequately designed, implemented, maintained,

6    monitored, and tested to ensure that Plaintiffs' and Class members' PII were secured from

7    unauthorized access, T-Mobile ignored the inadequacies and was oblivious to the risk of

8    unauthorized access it had created.

9        116.    T-Mobile's behavior establishes facts evidencing a reckless disregard for

10   Plaintiffs' and Class members' rights.

11       117.    T-Mobile, therefore, was grossly negligent.

12       118.    T-Mobile's negligence also constitutes negligence per se.

13       119.    The negligence is directly linked to injuries.

14       120.    As a result of T-Mobile's reckless disregard for Plaintiffs' and Class members'

15   rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies,

16   procedures, and practices were not adequately designed, implemented, maintained, monitored,

17   and tested, Plaintiffs and Class members suffered injury, which includes but is not limited to the

18   exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm.

19   Plaintiffs and Class members must monitor their financial accounts and credit histories more

20   closely and frequently to guard against identity theft. Plaintiffs and Class members also have

21   incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining

22   credit reports, credit freezes, credit monitoring services, and other protective measures to deter or

23   detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also

24   diminished the value of the PII.

25       121.    The harm to Plaintiffs and the Class members was a proximate, reasonably

26   foreseeable result of T-Mobile's breaches of the applicable laws and regulations.

27       122.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to

28   be proven at trial.

1
2

**COUNT FOUR**
**BREACH OF EXPRESS CONTRACTS**

3

     123.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth

4

herein.

5

     124.    Plaintiffs and members of the Class, additionally and alternatively, allege that

6

they entered into valid and enforceable express contracts with T-Mobile.

7

     125.    Under these express contracts, T-Mobile promised and was obligated to:

8

(a) provide services to Plaintiffs and Class members; and (b) protect Plaintiffs' and the Class

9

members' PII. In exchange, Plaintiffs and members of the Class agreed to pay money for these

10

services.

11

     126.    Both the provision of services, as well as the protection of Plaintiffs' and Class

12

members' PII, were material aspects of these contracts.

13

     127.    T-Mobile's express representations, including, but not limited to, express

14

representations found in T-Mobile's Privacy Notice, formed an express contract requiring T-

15

Mobile to implement data security adequate to safeguard and protect the privacy of Plaintiffs'

16

and Class members' PII.

17

     128.    Alternatively, the express contracts included implied terms requiring T-Mobile to

18

implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and

19

Class members' PII, including in accordance with federal, state and local laws, and industry

20

standards.

21

     129.    Consumers value their privacy, the privacy of their dependents, and the ability to

22

keep their PII associated with obtaining services private. To customers such as Plaintiffs and

23

Class members, services that do not adhere to industry-standard data security protocols to protect

24

PII are fundamentally less useful and less valuable than services that adhere to industry-standard

25

data security. Plaintiffs and Class members would not have entered into these contracts with T-

26

Mobile without an understanding that their PII would be safeguarded and protected.

27
28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

130.    A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PII to T-Mobile and paid for the provided services in exchange for, amongst other things, protection of their PII.

131.    T-Mobile materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Notice. Specifically, T-Mobile did not comply with federal, state, and local laws, or with industry standards, or otherwise protect Plaintiffs' and the Class members' PII, as set forth above. Further, on information and belief, T-Mobile has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with PII that they provided to T-Mobile. These Class members are as yet unaware of the potential source for the compromise of their PII.

132.    The 2022 Data Breach was a reasonably foreseeable consequence of T-Mobile's actions in breach of these contracts.

133.    As a result of T-Mobile's failure to fulfill the data security protections promised in these contracts, Plaintiffs and members of the Class did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

134.    Had T-Mobile disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiffs nor Class members, nor any reasonable person, would have purchased services from T-Mobile.

135.    As a result of T-Mobile's breach, Plaintiffs and Class members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

136.    As a result of T-Mobile's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, taking steps to protect themselves from the loss of their PII.

137.    Accordingly, Plaintiffs and the other members of the Class have been injured as a result of T-Mobile's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

## COUNT FIVE
## BREACH OF IMPLIED CONTRACTS

138.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

139.    Plaintiffs and Class members were required to provide their PII to obtain services from T-Mobile. Plaintiffs and Class members entrusted their PII to T-Mobile in order to obtain services from them.

140.    By providing their PII, and upon T-Mobile's acceptance of such information, Plaintiffs and Class members on one hand, and T-Mobile on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby T-Mobile was obligated to take reasonable steps to secure and safeguard that information.

141.    T-Mobile had an implied duty of good faith to ensure that the PII of Plaintiffs and Class members in its possession was only used in accordance with their contractual obligations.

142.    T-Mobile was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII and to comply with industry standards and state laws and regulations for the security of this information, and T-Mobile expressly assented to these terms in its Privacy Notice as alleged above.

143.    Under these implied contracts for data security, T-Mobile was further obligated to provide Plaintiffs and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

144.    Plaintiffs and Class members performed all conditions, covenants, obligations, and promises owed to T-Mobile, including paying for the services provided by T-Mobile and/or providing the PII required by T-Mobile.

145.    T-Mobile breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII, resulting in the Data Breach. T-Mobile unreasonably interfered with the contract benefits owed to Plaintiffs and Class members.

146.    Further, on information and belief, T-Mobile has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to T-Mobile. These Class members are unaware of the potential source for the compromise of their PII.

147.    The 2022 Data Breach was a reasonably foreseeable consequence of T-Mobile's actions in breach of these contracts.

148.    As a result of T-Mobile's conduct, Plaintiffs and Class members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

149.    Neither Plaintiffs, nor Class members, nor any reasonable person would have provided their PII to T-Mobile had T-Mobile disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

150.    As a result of T-Mobile's breach, Plaintiffs and Class members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

151.    As a result of T-Mobile's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiffs and the Class members have suffered actual identity theft and the ability to control their PII.

152.     Accordingly, Plaintiffs and Class members have been injured as a result of T-Mobile's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT SIX**
**BREACH OF IMPLIED DUTY OF**
**GOOD FAITH AND FAIR DEALING**

153.     Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

154.     Plaintiffs and Class members entered into and/or were the beneficiaries of contracts with Defendant, as alleged above.

155.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

156.     Special relationships exist between Defendant and Plaintiffs and Class members. Defendant entered into special relationships with Plaintiffs and Class members, who entrusted their confidential PII to Defendant and paid for services with Defendant.

157.     Defendant promised and was obligated to protect the confidentiality of Plaintiffs' and Class members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII, which resulted in the 2022 Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiffs and Class members by failing to implement reasonable and adequate security measures consistent with

industry standards to protect and limit access to the PII of Plaintiffs and the Class in Defendant's possession.

158.    Plaintiffs and Class members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying Defendant for services and providing them the confidential PII required by the contracts.

159.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and Class members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class members paid for, and the services they received without reasonable data privacy.

160.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

161.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from their attempt to ameliorate the effect of the 2022 Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

162.    As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

## COUNT SEVEN
## UNJUST ENRICHMENT
## (ALTERNATIVE TO BREACH OF CONTRACT CLAIM)

163.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

164.     Plaintiffs and Class members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

165.     Defendant collected, maintained, and stored the PII of Plaintiffs and Class members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiffs and Class members.

166.     The money that Plaintiffs and Class members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the 2022 Data Breach.

167.     As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class members paid for, and the services they received without reasonable data privacy.

168.     Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and Class members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class members paid for.

169.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiffs and the Class.

## COUNT EIGHT
## DECLARATORY JUDGMENT

170.     Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

171.    Plaintiffs and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence and negligent misrepresentation, and violations of various state and federal statutes.

172.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the 2022 Data Breach.

173.    As a result of the 2022 Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class going forward.

174.    An actual controversy has arisen in the wake of the 2022 Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII of Plaintiffs and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII of Plaintiffs and the Class.

175.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**B.    Claims Brought on Behalf of the Florida Subclass**

**COUNT NINE**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT,**
**Fla. Stat. §§ 501.201, *et seq.***

176.    Plaintiff Benjamin, on behalf of the Florida Subclass ("Plaintiff," for purposes of this Count), realleges and incorporates the preceding allegations as if fully set forth herein.

177.    Plaintiff and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

178.   T-Mobile advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

179.   T-Mobile engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

   b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

   c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. Ann. § 501.171(2), which was a direct and proximate cause of the 2022 Data Breach;

   d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

   e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. Ann. § 501.171(2);

   f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

   g.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. Ann. § 501.171(2).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

180.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

181.    Had T-Mobile disclosed to Plaintiffs and Subclass members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

182.    As a direct and proximate result of T-Mobile's unconscionable, unfair, and deceptive acts and practices, Plaintiff and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the 2022 Data Breach.

183.    Plaintiff and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

1    **C.    Claims Brought on Behalf of the Idaho Subclass**

2                                  **COUNT TEN**
                          **VIOLATION OF THE IDAHO**
3                    **CONSUMER PROTECTION ACT,**
                         **Idaho Code §§ 48-601, et seq.**

4          184.   Plaintiff Gomez, on behalf of the Idaho Subclass ("Plaintiff," for purposes of this

5    Count), repeats and realleges the allegations contained in the Statement of Facts as if fully set

6    forth herein.

7          185.   T-Mobile is a "person" as defined by Idaho Code § 48-602(1).

8          186.   T-Mobile's conduct as alleged herein pertained to "goods" and "services" as

9    defined by Idaho Code § 48-602(6) and (7).

10         187.   T-Mobile advertised, offered, or sold goods or services in Idaho and engaged in

11   trade or commerce directly or indirectly affecting the people of Idaho.

12         188.   T-Mobile engaged in unfair and deceptive acts or practices, and unconscionable

13   acts and practices, in the conduct of trade and commerce with respect to the sale and

14   advertisement of goods and services, in violation of Idaho Code §§ 48-603 and 48-603(C),

15   including:

16         a.   Representing that goods or services have sponsorship, approval, characteristics,

17              ingredients, uses, benefits, or quantities that they do not have;

18         b.   Representing that goods are of a particular standard, quality, or grade when they

19              are of another;

20         c.   Advertising goods or services with intent not to sell them as advertised;

21         d.   Engaging in other acts and practices that are otherwise misleading, false, or

22              deceptive to consumers; and.

23         e.   Engaging in unconscionable methods, acts or practices in the conduct of trade or

24              commerce.

25         189.   T-Mobile's unfair, deceptive, and unconscionable acts and practices include:

26

27

28

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the 2022 Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

190.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

191.     T-Mobile intended to mislead Plaintiff and Idaho Subclass members and induce them to rely on its misrepresentations and omissions. T-Mobile knew its representations and omissions were false.

192.     T-Mobile acted intentionally, knowingly, and maliciously to violate Idaho's Consumer Protection Act, and recklessly disregarded Plaintiff and Idaho Subclass members' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

193.     As a direct and proximate result of T-Mobile's unfair, deceptive, and unconscionable conduct, Plaintiff and Idaho Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the 2022 Data Breach.

194.     Plaintiff and Idaho Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, costs, and attorneys' fees.

**D.     Claims Brought on Behalf of the Ketucky Subclass**

<u>**COUNT ELEVEN**</u>
**KENTUCKY COMPUTER SECURITY BREACH NOTIFICATION ACT,**
**Ky. Rev. Stat. Ann. §§ 365.732, et seq.**

195.     Plaintiff Bailey ("Plaintiff," for purposes of this Count), individually and on behalf of the Kentucky Subclass, realleges and incorporates the preceding allegations as if fully set forth herein.

196.     T-Mobile is required to accurately notify Plaintiff and Kentucky Subclass members if it becomes aware of a breach of its data security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Kentucky Subclass members' PII, in

1    the most expedient time possible and without unreasonable delay under Ky. Rev. Stat. Ann.

2    § 365.732(2).

3        197.    T-Mobile is a business that holds computerized data that includes PII as defined

4    by Ky. Rev. Stat. Ann. § 365.732(2).

5        198.    Plaintiff's and Kentucky Subclass members' personal information (for the

6    purpose of this count, "PII"), includes PII as covered under Ky. Rev. Stat. Ann. § 365.732(2).

7        199.    Because T-Mobile was aware of a breach of its security system that was

8    reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Kentucky

9    Subclass members' PII, T-Mobile had an obligation to disclose the data breach in a timely and

10   accurate fashion as mandated by Ky. Rev. Stat. Ann. § 365.732(2).

11       200.    By failing to disclose the T-Mobile data breach in a timely and accurate manner,

12   T-Mobile violated Ky. Rev. Stat. Ann. § 365.732(2).

13       201.    As a direct and proximate result of T-Mobile's violations of Ky. Rev. Stat. Ann.

14   § 365.732(2), Plaintiff and Kentucky Subclass members suffered damages, as described above.

15       202.    Plaintiff and Kentucky Subclass members seek relief under Ky. Rev. Stat. Ann.

16   § 446.070, including actual damages.

17                              **COUNT TWELVE**
18                **KENTUCKY CONSUMER PROTECTION ACT,**
                  **Ky. Rev. Stat. Ann. §§ 367.110, _et seq._**

19       203.    Plaintiff Bailey ("Plaintiff," for purposes of this Count), individually and on

20   behalf of the Kentucky Subclass, realleges and incorporates the preceding allegations as if fully

21   set forth herein.

22       204.    T-Mobile is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

23       205.    T-Mobile advertised, offered, or sold goods or services in Kentucky and engaged

24   in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky.

25   Rev. Stat. 367.110(2).

26       206.    T-Mobile engaged in unfair, false, misleading, deceptive, and unconscionable acts

27   or practices, in violation of Ky. Rev. Stat. § 367.170, including:

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

b.  Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the 2022 Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

207.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

208.    T-Mobile intended to mislead Plaintiff and Kentucky Subclass members and induce them to rely on its misrepresentations and omissions.

1   209.    Plaintiff and Kentucky Subclass members' purchased goods or services for

2   personal, family, or household purposes and suffered ascertainable losses of money or property

3   as a result of T-Mobile's unlawful acts and practices.

4   210.    The above unlawful acts and practices by T-Mobile were immoral, unethical,

5   oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Kentucky

6   Subclass members that they could not reasonably avoid; this substantial injury outweighed any

7   benefits to consumers or to competition.

8   211.    T-Mobile acted intentionally, knowingly, and maliciously to violate Kentucky's

9   Consumer Protection Act, and recklessly disregarded Plaintiff and Kentucky Subclass members'

10  rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy

11  protections were inadequate.

12  212.    As a direct and proximate result of T-Mobile's unlawful acts and practices,

13  Plaintiff and Kentucky Subclass members have suffered and will continue to suffer injury,

14  ascertainable losses of money or property, and monetary and non-monetary damages, as

15  described herein, including but not limited to fraud and identity theft; time and expenses related

16  to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of

17  fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of

18  the value of access to their PII; and the value of identity protection services made necessary by

19  the 2022 Data Breach.

20  213.    Plaintiff and Kentucky Subclass members seek all monetary and non-monetary

21  relief allowed by law, including damages, punitive damages, restitution or other equitable relief,

22  injunctive relief, and reasonable attorneys' fees and costs.

23

24

25

26

27

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.      Claims Brought on Behalf of the New Jersey Subclass**

**COUNT THIRTEEN**
**NEW JERSEY CUSTOMER SECURITY**
**BREACH DISCLOSURE ACT,**
**N.J. Stat. Ann. §§ 56:8-163, *et seq.***

214.    Plaintiff Magbaleta ("Plaintiff," for purposes of this Count), individually and on behalf of the New Jersey Subclass, realleges and incorporates the preceding allegations as if fully set forth herein.

215.    T-Mobile is a business that owns or licenses computerized data that includes personal information (for the purpose of this count, "PII"), on behalf of another business under N.J. Stat. Ann. § 56:8-163(b).

216.    Plaintiff's and New Jersey Subclass members' PII (including names, addresses, and account numbers) includes PII covered under N.J. Stat. Ann. §§ 56:8-163, *et seq*.

217.    Under N.J. Stat. Ann. § 56:8-163(b), "[a]ny business . . . that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers . . . of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person."

218.    Because T-Mobile discovered a breach of its security system in which PII was, or is reasonably believed to have been, acquired by an unauthorized person and the PII was not secured, T-Mobile had an obligation to disclose the T-Mobile data breach in a timely and accurate fashion as mandated under N.J. Stat. Ann. §§ 56:8-163, *et seq*.

219.    By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated N.J. Stat. Ann. § 56:8-163(b).

220.    As a direct and proximate result of T-Mobile's violations of N.J. Stat. Ann. § 56:8-163(b), Plaintiff and New Jersey Subclass members suffered the damages described above.



221.    Plaintiff and New Jersey Subclass members seek relief under N.J. Stat. Ann. § 56:8-19, including treble damages, attorneys' fees and costs, and injunctive relief.

**COUNT FOURTEEN**
**NEW JERSEY CONSUMER FRAUD ACT,**
**N.J. Stat. Ann. §§ 56:8-1, *et seq.***

222.    Plaintiff Magbaleta ("Plaintiff," for purposes of this Count), individually and on behalf of the New Jersey Subclass, realleges and incorporates the preceding allegations as if fully set forth herein.

223.    T-Mobile is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

224.    T-Mobile sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

225.    The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-2 prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

226.    T-Mobile's unconscionable and deceptive practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the 2022 Data Breach;



d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

227.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

228.   T-Mobile intended to mislead Plaintiff and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

229.   T-Mobile acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiff and New Jersey Subclass members' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

230.   As a direct and proximate result of T-Mobile's unconscionable and deceptive practices, Plaintiff and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of

the value of access to their PII; and the value of identity protection services made necessary by the 2022 Data Breach.

231.    Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**F.    Claims Brought on Behalf of the North Carolina Subclass**

<u>**COUNT FIFTEEN**</u>
**NORTH CAROLINA IDENTITY THEFT PROTECTION ACT,**
**N.C. Gen. Stat. §§ 75-60, et seq.**

232.    Plaintiff Grantham ("Plaintiff," for purposes of this Count), individually and on behalf of the North Carolina Subclass, realleges and incorporates the preceding allegations as if fully set forth herein.

233.    T-Mobile is a business that owns or licenses computerized data that includes personal information (for the purpose of this count, "PII"), as defined by N.C. Gen. Stat. § 75-61(1).

234.    Plaintiff and North Carolina Subclass members are "consumers" as defined by N.C. Gen. Stat. § 75-61(2).

235.    T-Mobile is required to accurately notify Plaintiff and North Carolina Subclass members if it discovers a security breach, or receives notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), without unreasonable delay under N.C. Gen. Stat. § 75-65.

236.    Plaintiff's and North Carolina Subclass members' PII includes PII as covered under N.C. Gen. Stat. § 75-61(10).

237.    Because T-Mobile discovered a security breach and had notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), T-Mobile had an obligation to disclose the T-Mobile data breach in a timely and accurate fashion as mandated by N.C. Gen. Stat. § 75-65.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

238.    By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated N.C. Gen. Stat. § 75-65.

239.    A violation of N.C. Gen. Stat. § 75-65 is an unlawful trade practice under N.C. Gen. Stat. Art. 2A § 75-1.1.

240.    As a direct and proximate result of T-Mobile's violations of N.C. Gen. Stat. § 75-65, Plaintiff and North Carolina Subclass members suffered damages, as described above.

241.    Plaintiff and North Carolina Subclass members seek relief under N.C. Gen. Stat. §§ 75-16 and 16.1, including treble damages and attorney's fees.

## COUNT SIXTEEN
### NORTH CAROLINA UNFAIR TRADE PRACTICES ACT, N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*

242.    Plaintiff Grantham ("Plaintiff," for purposes of this Count), individually and on behalf of the North Carolina Subclass, realleges and incorporates the preceding allegations as if fully set forth herein.

243.    T-Mobile advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

244.    T-Mobile engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the 2022 Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

245.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

246.    T-Mobile intended to mislead Plaintiff and North Carolina Subclass members and induce them to rely on its misrepresentations and omissions.

247.    Had T-Mobile disclosed to Plaintiffs and North Carolina Subclass members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the North Carolina Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

248.    T-Mobile acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff and North Carolina Subclass members' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

249.    As a direct and proximate result of T-Mobile's unfair and deceptive acts and practices, Plaintiff and North Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the 2022 Data Breach.

250.    T-Mobile's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

251.    Plaintiff and North Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

**G.    Claims Brought on Behalf of the Texas Subclass**

<u>**COUNT SEVENTEEN**</u>
**DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,**
**Texas Bus. & Com. Code §§ 17.41, et seq.**

252.    Plaintiff Garcia ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

253.    T-Mobile is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

254.    Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

255.    T-Mobile advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

256.    T-Mobile engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

    a.  Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

    b.  Representing that goods or services are of a particular standard, quality or grade, if they are of another;

    c.  Advertising goods or services with intent not to sell them as advertised; and

    d.  Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

257.    T-Mobile's false, misleading, and deceptive acts and practices include:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the 2022 Data Breach;

    b.  Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the 2022 Data Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the 2022 Data Breach;

    d.  Misrepresenting that they would protect the privacy and confidentiality of

Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

258.    T-Mobile intended to mislead Plaintiff and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

259.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

260.    Had T-Mobile disclosed to Plaintiff and Subclass members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

261.    T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

262.    T-Mobile had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the PII in its possession, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Texas Subclass, and T-Mobile because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in T-Mobile. T-Mobile's duty to disclose also arose from its:

a.    Possession of exclusive knowledge regarding the security of the data in its systems;

b.    Active concealment of the state of its security; and/or

c.    Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff and the Texas Subclass that contradicted these representations.

263.    T-Mobile engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). T-Mobile engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

264.    Consumers, including Plaintiff and Texas Subclass members, lacked knowledge about deficiencies in T-Mobile's data security because this information was known exclusively by T-Mobile. Consumers also lacked the ability, experience, or capacity to secure the PII in T-Mobile's possession or to fully protect their interests with regard to their data. Plaintiff and Texas Subclass members lack expertise in information security matters and do not have access to T-Mobile's systems in order to evaluate its security controls. T-Mobile took advantage of its special skill and access to PII to hide its inability to protect the security and confidentiality of Plaintiff and Texas Subclass members' PII.

265.    T-Mobile intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from T-Mobile's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The T-Mobile data breach, which resulted from T-Mobile's

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

unconscionable business acts and practices, exposed Plaintiff and Texas Subclass members to a wholly unwarranted risk to the safety of their PII and the security of their identity or credit, and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiff and Texas Subclass members cannot mitigate this unfairness because they cannot undo the 2022 Data Breach.

266.    T-Mobile acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

267.    As a direct and proximate result of T-Mobile's unconscionable and deceptive acts or practices, Plaintiff and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the 2022 Data Breach. T-Mobile's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

268.    T-Mobile's violations present a continuing risk to Plaintiff and Texas Subclass members as well as to the general public.

269.    Plaintiff and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## VII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed Class and Subclasses, request that the Court:

a.      Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

b.      Find that T-Mobile breached its duty to safeguard and protect the PII of Plaintiffs and Class members that was compromised in the 2022 Data Breach;

c.      Award Plaintiffs and Class members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

d.      Award equitable, injunctive, and declaratory relief as may be appropriate;

e.      Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.      Award pre-judgment and post-judgment interest as prescribed by law; and

g.      Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated February 16, 2023                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Thomas E. Loeser*
     Thomas E. Loeser (SBN 38701)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
toml@hbsslaw.com

*Attorneys for Plaintiffs and the proposed Class and Sublcasses*


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX